UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

MICHAEL VAN PRAAGH and JAMES
LYLE

               Defendants.

--------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 1, 2014

1: (S3) 14 Cr. 189 (PAC)

MEMORANDUM & OPINION

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendants Michael Van Praagh and James Lyle are charged with a conspiracy to distribute at least 500 grams of substances containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and with the distribution and possession with intent to distribute at least 50 grams of substances containing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Both move to suppress physical evidence seized during their arrests and evidence found during subsequent searches of their cellular phones. Van Praagh also moves to sever his case from his co-defendant, and Lyle moves to suppress a post-arrest statement made to law enforcement officials. The motions are DENIED.

## STATEMENT OF FACTS

### I.    Defendant Van Praagh

On May 30, 2013, the staff of a midtown hotel (the "Hotel") informed New York City Police that an employee had found a large quantity of white powder in a bag and over $20,000 in cash in the safe of Room 211.[1] The Hotel staff also informed police that Van Praagh had stayed

---

[1] The white powder was later determined to be methamphetamine.

in Room 211, but after checking out, he had returned to the Hotel and stated: "I left my property in the safe of Room 211."

NYPD officers arrested Van Praagh at the Hotel. During the arrest, the officers seized a cellular phone from Van Praagh's pocket. The officers also searched a Vespa scooter parked outside the Hotel that was identified as belonging to Van Praagh[2] and seized a scale and approximately $1,000 in cash.

On June 24, 2013, NYPD Officer Giacomo Sciuto sought a search warrant in New York City Criminal Court for Van Praagh's cellular phone; but the Criminal Court judge declined to issue the warrant. Opp. Mtn., Ex. F. Officer Sciuto then revised the supporting affidavit to include additional factual allegations (the "Revised Affidavit"). In particular, the Revised Affidavit stated that Van Praagh was Facebook "friends" with an individual who had repeatedly sold crystal methamphetamine to undercover police officers, and that financial records indicated payments from that individual to Van Praagh. Opp. Mtn., Ex. B, ¶ 6(d)-(f). The Revised Affidavit further stated that "a previous application of a different form of this warrant was reviewed by [the Criminal Court judge] and he declined to sign it." *Id.* at p. 3. A New York Supreme Court judge signed the revised warrant application on June 24, 2013.

## II.    Defendant Lyle

On December 11, 2013, at approximately 9:20 p.m., New York City police officers observed Lyle park and exit a car he was driving in midtown Manhattan. According to the officers, Lyle had a knife "clipped to his . . . pants pocket in public view," which, upon further

---

[2] According to the New York State Court Voluntary Disclosure Form, Van Praagh stated to the officers that his motorbike was parked outside the hotel. Opp. Mtn., Ex. C, at 1-2. Van Praagh is also the registered owner and title holder of the scooter. *Id.*, Ex. D.

investigation, they determined to be a gravity knife. Opp. Mtn., Ex. H, at 1. Lyle told the

officers that he was legally permitted to carry the gravity knife because he was a member of the

stagehands union and used the knife to perform his job. Lyle Aff., ¶ 6. The officers then asked

Lyle whether he had been driving the car that was parked nearby. Lyle answered that he had not,

but after the officers informed him that they had seen him driving it, Lyle admitted to driving the

car. According to Lyle, he had "initially lied about driving the car" because his driver's license

was suspended at the time. *Id.* at ¶ 7.

The officers arrested Lyle and took the car to the police precinct, where an inventory

search was conducted. Lyle Mtn., Ex. A, ¶ 6; Lyle Aff., ¶ 8. Over one pound of

methamphetamine and approximately $39,000 in cash were found in the trunk of the car. Police

also recovered two cellular phones and a computer tablet from the car.

Lyle claims that his girlfriend had rented the car and had given him permission to drive it.

Lyle Aff., ¶ 3. There is no indication that Lyle was an authorized driver on the rental agreement;

indeed, he concedes that his license was suspended at the time of the arrest. *Id.* at ¶ 8.

### A. September 11, 2014 Hearing

On September 11, 2014, the Court held a hearing regarding Lyle's custodial statement to

law enforcement officers on December 12, 2013, at the District Attorney's Office (the

"Statement").[3]

At the hearing, the Government witnesses credibly testified that shortly before making

the Statement, Lyle was read his *Miranda* rights and signed a pre-printed form indicating that he

---

[3] While Lyle made additional statements to law enforcement officers while in custody, the Government has represented that the only custodial interrogation statement it intends to use at trial is the December 12, 2013 Statement made at the District Attorney's Office.

understood and wished to waive those rights.[4]  *See* Tr. 17:25-18:3; 85:15-86:4; Gov. Ex. 3506-E.

New York County Assistant District Attorney Scally also testified that, while at the time he

believed the Statement was being videotaped, he was subsequently unable to locate any

videotape of the Statement.  Tr. 87:21-88:17.

All four of the Government's witnesses credibly testified that they had never heard Lyle

request an attorney.

Lyle did not testify at the hearing, but submitted two affidavits in which he set forth his

version of the circumstances surrounding the interrogation.  The affidavits concede that Lyle

signed a form acknowledging the waiver of his *Miranda* rights, but state that the officers ignored

his request for an attorney during the interrogation.  The affidavits also contain various

inconsistencies.  For example, the first affidavit alleges that Lyle was not permitted to make a

phone call at the police precinct; the second affidavit states that he was allowed to make a phone

call, but an officer "cut off the call."  Lyle Aff., ¶ 10; Reply Aff., ¶ 8-9.  Similarly, the first

affidavit indicates that Lyle signed a waiver of his *Miranda* rights prior to being questioned,

while the second affidavit states that he received his *Miranda* warnings only after officers had

questioned him extensively.  Lyle Aff., ¶ 10; Reply Aff., ¶ 10.  In addition, the second affidavit

contains allegations regarding the December 12 Statement, but the first affidavit contains no

mention of the Statement.

## LEGAL PRINCIPLES

### I.   Probable Cause for Arrests

Probable cause exists for an arrest if "the totality of the circumstances, as viewed by a

---

[4] The arresting officer also testified that Lyle had been read his *Miranda* rights earlier at the police precinct, and had signed a pre-printed waiver form then as well. *See* Tr. 8:24-9:4; Gov. Ex. 3506-W.

reasonable and prudent police officer in light of his training and experience, would lead that police officer to believe that a criminal offense has been or is being committed." *United States v. Moreno*, 897 F.2d 26, 31 (2d Cir. 1990) (citation omitted). If an officer has probable cause to arrest a defendant, the officer may also perform a search incident to the arrest to "ensure [the officer's] safety and safeguard evidence." *Virginia v. Moore*, 553 U.S. 164, 176 (2008).

## II.   Seizure of Evidence from Vehicles

### A. Legitimate Expectation of Privacy

A defendant "can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993). To establish a violation of his Fourth Amendment rights, a defendant bears the burden of demonstrating that at the time of the search he had a "legitimate expectation of privacy" in the searched place or item. *United States v. Paulino*, 850 F.2d 93, 96 (2d Cir. 1988).

The driver of a vehicle may establish a legitimate expectation of privacy in the vehicle by showing that he owns it, or that he has permission from the owner to use it. *United States v. Pena*, 961 F.2d 333, 337 (2d Cir. 1992); *cf. United States v. Ponce*, 947 F.2d 646, 649 (2d Cir. 1991) (determining ownership of car from vehicle registration). If the vehicle is a rental car, on the other hand, a defendant generally does not have a legitimate expectation of privacy in the car if he is "not listed on the rental agreement as an authorized driver."[5]  *See United States v.*

---

[5] Though the Second Circuit does not appear to have addressed this issue, the Third, Fourth, Fifth, Tenth, and Sixth Circuits have held that a defendant who is not an authorized driver under the rental agreement generally lacks a legitimate privacy interest in the vehicle. *See Kennedy*, 638 F.3d at 165; *United State v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994); *United States v. Seeley*, 331 F.3d 471, 472 (5th Cir. 2003); *United States v. Roper*, 918 F.2d 885, 887-88 (10th Cir. 1990); *United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001) (noting the "general rule" that

*Kennedy*, 638 F.3d 159, 165 (3d Cir. 2011).  This is true even if the defendant receives

permission from the lessee to drive the rental car.[6]  *Id.*

## B.  Search Incident to Arrest

Even if a defendant has a legitimate expectation of privacy in a vehicle, officers may

conduct a warrantless search of the vehicle incident to the defendant's arrest if it is "reasonable

to believe evidence relevant to the crime of arrest might be found in the vehicle."  *Arizona v.*

*Gant*, 556 U.S. 332, 343 (2009) (citation omitted).  If a defendant is arrested for a drug offense in

close proximity to his vehicle, an officer may reasonably believe, based on the surrounding

circumstances, that further evidence of the crime—for example, large quantities of cash—may be

found in the vehicle.  *See United States v. Akefe*, 568 Fed. Appx. 1, 5-6 (2d Cir. 2014).

## C.  Inventory Search

Officers may also conduct a warrantless search of a vehicle to "make an inventory of its

contents" when they take it into custody.  *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir.

2008).  The purpose of an inventory search is "not . . . to detect crime or serve criminal

prosecutions," but to protect the police from potential danger and "claims of lost or stolen

property," and to "protect the owner's property while it is in police custody."  *Id.*  Officers must

conduct such searches pursuant to "standardized criteria . . . or established routine."  *United*

---

"an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle" but
declining to adopt a bright line test).

[6] In contrast, the Eighth and Ninth Circuits have held that "an unauthorized driver who received permission to use a
rental car . . . may challenge the search to the same extent as the authorized renter."  *United States v. Thomas*, 447
F.3d 1191, 1199 (9th Cir. 2006); *see United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998).  *See also United
States v. Little*, 945 F. Supp. 79, 83 n.2 (S.D.N.Y. 1996) (holding that defendant, who had permission from lessee to
drive rental car, had "a legitimate possessory interest and accompanying expectation of privacy sufficient to
establish standing to attack an unlawful search of the vehicle").

*States v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002) (citation omitted).

Police officers may take a vehicle into custody pursuant to their "community caretaking function" if the vehicle "will be inaccessible to its owner for an extended period—as a result of an arrest, for example . . . if such a step is reasonable under the circumstances." *United States v. Barrios*, 2007 U.S. Dist. LEXIS 81136, at *5 (S.D.N.Y. Nov. 1, 2007).  By taking custody of the vehicle, the police safeguard the vehicle from vandalism or theft during the owner's absence. *See id* at *7.  Moreover, police may take custody of a vehicle without offering a defendant "the opportunity to make other arrangements for the safekeeping of his property." *Colorado v. Bertine*, 479 U.S. 367, 373-74 (1987).

If a defendant has been lawfully arrested and "an immediately ensuing search is not justifiable as incident to the arrest," the evidence recovered during the search may still be admissible if it "would inevitably have been discovered in a permissible inventory search." *United States v. Perea*, 986 F.2d 633, 644 (2d Cir. 1993).

## III.    Warrants for Searches of Electronic Devices

To determine whether probable cause exists for a warrant, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  An issuing judge's determination of probable cause is entitled to "considerable deference." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (citation omitted).  The reviewing court merely ensures that the issuing judge "had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238 (citation

omitted).

## IV.     Statements to Law Enforcement Authorities

Statements that a defendant makes to law enforcement authorities during a custodial

interrogation are generally inadmissible unless the defendant first waives the rights set forth in

*Miranda v. Arizona.*  384 U.S. 436, 479 (1966).  The Government must demonstrate by a

preponderance of the evidence that the defendant's waiver was knowing and voluntary.  *United*

*States v. Corbett*, 750 F.3d 245, 252-53 (2d Cir. 2014).  In determining whether the Government

has established a valid waiver, the reviewing court must consider "the totality of all the

surrounding circumstances" to determine whether the waiver was "the product of an essentially

free and unconstrained choice." *United States v. Bye*, 919 F.2d 6, 8-9 (2d Cir. 1990) (citations

omitted).

A waiver of *Miranda* rights is involuntary only if law enforcement officials have engaged

in coercive activity. *United States v. Feola*, 651 F. Supp. 1068, 1119 (S.D.N.Y. 1987); *see*

*United States v. Giamela*, 2005 U.S. Dist. LEXIS 12047, at *4 (S.D.N.Y. June 13, 2005)

(voluntary waiver where defendant alleged that he was "under the influence of narcotics at the

time of his arrest") ; *United States v. Knorr*, 2005 U.S. Dist. LEXIS 2142, at *4 (S.D.N.Y. Feb.

14, 2005) (voluntary waiver where defendant alleged that he "was too hung over, sick, and tired

to fully understand the proceedings").

Once a defendant invokes his or her right to counsel, law enforcement officials are no

longer permitted to question the defendant "until counsel has been made available to him, unless

the accused . . . initiates further communication . . . with the police." *Edwards v. Arizona*, 451

U.S. 477, 484-85 (1981).  The defendant must invoke this right "unambiguously," that is,

"sufficiently clearly that a reasonable police officer in the circumstances would understand the

statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994).

Finally, unless a defendant demonstrates "bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Moreover, to be entitled to sanctions based on the Government's loss of evidence, a defendant must establish that the loss prejudiced his or her defense. *See United States v. Bakhtiar*, 994 F.2d 970, 976 (2d Cir. 1993) ("the appropriateness and extent of sanctions . . . depends upon a case-by-case assessment of the government's culpability for the loss, together with a realistic appraisal of its significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the government's untainted proof") (citation omitted).

## V.   Joinder and Severance

Defendants are properly joined if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). A "non-frivolous conspiracy charge is sufficient to support joinder of defendants." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988). A defendant may be entitled to severance if the joinder of the offenses "appears to prejudice [the] defendant." Fed. R. Crim. P. 14(a). The defendant, however, must demonstrate "not simply some prejudice, but substantial prejudice." *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980).

## ANALYSIS

### I.   Defendant Van Praagh

#### a.   Probable Cause for Arrest

There was probable cause for Van Praagh's arrest. Hotel staff informed police that Van Praagh was registered in Room 211, and when he checked out they found a bag of white powder

and $20,000 in cash in the safe of Room 211.  Thereafter Van Praagh returned to the Hotel to

retrieve what he said was his property from that room.  In these circumstances it was completely

reasonable for the officers to believe that the contents of the safe were illegal contraband, and

that the contraband belonged to Van Praagh.  Furthermore, because the arrest was based on

probable cause, the police were permitted to search Van Praagh and to seize his cellular phone.

*See Moore*, 553 U.S. 164, 176 (2008).

### b.  Seizure of Evidence from Vespa Scooter

The Government contends that Van Praagh has failed to establish a legitimate privacy

interest in the scooter because he has not submitted an affidavit asserting ownership of the

scooter.  Opp. Mtn. 6-8.  But certain public records on proof of ownership are available; Van

Praagh is the registered owner and title holder of the scooter.  Opp. Mtn. Ex. D; *see Ponce*, 947

F.2d at 649.  At the time of his arrest on May 30, 2013, Van Praagh stated that his "motorbike

was parked outside the hotel."  Opp. Mtn., Ex. C, at 2.  In these circumstances where ownership

is not controverted, the Court will proceed to determine whether Van Praagh possessed a

legitimate privacy interest in the contents of his scooter; as the owner and driver, Van Praagh

possessed such an interest.

Nonetheless, the motion to suppress the cash and scale found in the scooter is denied.

The search of the scooter was permissible as incident to arrest.  At the time of Van Praagh's

arrest, police officers had probable cause to believe that he had returned to the Hotel to retrieve

large quantities of drugs and $20,000 in cash.  Under the circumstances, it was entirely

reasonable for the officers to believe that Van Praagh's scooter, which was parked outside the

Hotel, contained additional evidence of Van Praagh's narcotics crimes.  *See Akefe*, 568 Fed.

Appx. at 6.  The $1,000 in cash and the scale that officers recovered during the search of Van

10

Praagh's scooter are therefore admissible.

Furthermore, it was inevitable that the cash and the scale would have been recovered during an inventory search. The officers took custody of the scooter pursuant to the police community caretaking function: Van Praagh had been arrested and would have been unable for an extended period of time to move his scooter, which was parked on a public street in midtown Manhattan. *See United States v. Barrios*, 2007 U.S. Dist. LEXIS 81136, at *5. Moreover, Van Praagh's Vespa scooter was more vulnerable to vandalism and theft than a car with locking doors.

Therefore, the $1,000 in cash and the scale are admissible on the additional basis that the officers would inevitably have discovered them during the inventory search of the scooter. *See Perea*, 986 F.2d 633 at 644.

### c. Search of Cellular Phone

The warrant to search Van Praagh's cell phone was supported by probable cause. The initial affidavit set forth in detail the facts leading up to Van Praagh's arrest. It stated that large quantities of methamphetamine and cash were found in Room 211 of the Hotel; that Van Praagh had returned to the Hotel to retrieve property from that room; that Van Praagh had been carrying his phone when he was arrested; and that officers had retrieved additional cash and a scale from Van Praagh's scooter. It concluded by stating that, based on Officer Sciuto's "training and experience," narcotics traffickers commonly store telephone numbers and contact information for their associates in their cellular phones. Opp. Mtn. Ex. B, at 2-3. The New York Criminal Court judge refused to sign the warrant.

The affidavit was immediately revised to include additional information supporting a probable cause determination. The affidavit added that Van Praagh was Facebook "friends" with

11

an individual who had repeatedly sold crystal methamphetamine to undercover police officers, and that financial records indicated payments from that individual to Van Praagh. *See* Opp. Mtn. Ex. B, ¶ 6(d)-(f). This additional information was sufficient to support the issuing judge's decision that there was a substantial basis to conclude that probable cause existed to search Van Praagh's phone.[7] *Gates*, 462 U.S. at 238.

### d. Motion to Sever

The Defendants are properly joined because they are charged as co-conspirators in a narcotics conspiracy. Van Praagh has offered no explanation of the "substantial prejudice" that he will suffer due to the joinder of the Defendants' alleged offenses. *See Werner*, 620 F.2d at 928. Therefore, Van Praagh's motion to sever is denied.

## II.     Defendant Lyle

### a. Probable Cause

There was probable cause for Lyle's arrest. Under New York law, possession of a gravity knife is a crime. N.Y. Penal Law § 265.01. Officers observed a knife clipped to Lyle's pocket "in public view," and, upon further investigation, determined that it was a gravity knife. Opp. Mtn., Ex. H, at 1. Indeed, prior to his arrest, Lyle acknowledged to the officers that he was carrying a gravity knife. Lyle Aff., ¶ 6. His explanation that there was an exception for members of the stagehands union is patently false.

### b. Seizure of Evidence from Vehicles

Lyle lacked a legitimate expectation of privacy in the rental car. *See Paulino*, 850 F.2d at

---

[7] The fact that the Criminal Court judge initially declined to sign the warrant does not show lack of probable cause. The Revised Affidavit included additional facts from which a judge could determine that probable cause existed, and it also stated that the Criminal Court judge had previously declined to sign an earlier warrant. Opp. Mtn. Ex. B, at p. 3.

96.   He has not established that the car was rented in his name, nor that he was an authorized driver under the rental contract. Indeed, Lyle first informed the officers that he had not been driving the car at all, but later admitted that he had "lied about driving the car" because his license was suspended. Lyle Aff., ¶ 8. Lyle asserts that his girlfriend, who had rented the car, had given him permission to drive it. Lyle Aff. ¶ 3. This assertion—which is unsupported by evidence from the car rental company or Lyle's girlfriend—is insufficient to establish Lyle's expectation of privacy in the rental car. *See Kennedy*, 638 F.3d at 165. Indeed, Lyle knew that he could not have been an authorized driver of the car because he did not even have a valid license at the time. Lyle Aff. ¶ 8.

Lyle has failed to establish a legitimate privacy interest in the rental car, and so he may not challenge the search of the car. The seizure of the pound of methamphetamine, $39,000 in cash, cellular phones, and computer tablet found in the car was therefore permissible.

Even if Lyle had established a legitimate privacy interest in the car, the evidence would still be admissible because it was found pursuant to a valid inventory search. Lyle had been arrested and was unable for an extended period of time to move the car, which was parked on a busy street in midtown Manhattan. Lyle could not have moved the car in any event because he did not have a valid driver's license. Under the circumstances, the officers were justified in taking custody of the car to protect it from theft or vandalism.[8] *See United States v. Barrios*, 2007 U.S. Dist. LEXIS 81136, at *5. Furthermore, the officers were not required to allow Lyle to make arrangements for his girlfriend to retrieve the car. *See Bertine*, 479 U.S. at 373.

---

[8] This is particularly true where, as here, the vehicle is a rental car—impounding the car protects the interests of the owner of the car, the rental company.

13

### c. Statements to Law Enforcement Authorities

The Government has established that Lyle's waiver of his *Miranda* rights was knowing and voluntary. *See Corbett*, 750 F.3d at 252-53. The witnesses at the September 11, 2014 hearing testified credibly and the Court accepts their testimony, rather than the internally inconsistent assertions in Lyle's two affidavits. The witnesses credibly testified that Lyle waived his *Miranda* rights prior to making the Statement. The Government also submitted a pre-printed waiver form dated December 12, 2013, containing Lyle's signature and initials. *See* Gov. 3506-E.

The record indicates no coercive police conduct that would render Lyle's waiver involuntary. Though Lyle asserts that he was hungry, thirsty, and tired at the time he waived his *Miranda* rights, he does not allege any coercive conduct by law enforcement officials.[9] *See Knorr*, 2005 U.S. Dist. LEXIS 2142, at *4. The fact that Lyle may have been under the influence of a narcotic while in custody does not render his waiver involuntary for the same reason. *See Giamela*, 2005 U.S. Dist. LEXIS 12047, at *4. Each of the witnesses at the September 11, 2014 hearing also credibly testified that they had never heard Lyle request a lawyer.

Finally, the failure of the District Attorney's Office to videotape Lyle's Statement does not justify sanctions because Lyle has failed to demonstrate either "bad faith on the part of [law enforcement officials]" or "that the loss prejudiced his . . . defense." See *Youngblood*, 488 U.S.

---

[9] In fact, Officer Williams testified that it is her "practice" to give defendants in the police precinct food or drink "if they are hungry," though she could not recall if she had done so in this instance. Tr. 7:14-23. Defendant Lyle also concedes that he was given food while at the Midtown Precinct. Lyle Reply Aff., ¶ 11.

14

at 58; *Bakhtiar*, 994 F.2d at 976.  Assistant District Attorney Scally's testimony indicated that

the Statement was likely not videotaped due to an equipment malfunction or human error.  Tr.

87:21-88:6.  ADA Scally testified that he had attempted to locate the videotape, but was

ultimately unable to do so.  Tr. 88:7-17.  These actions do not constitute bad faith by the

Government.

Lyle has also failed to establish that the loss of the videotape prejudiced his defense.  See

*Bakhtiar*, 994 F.2d at 976.  Officer Williams and ADA Scally credibly testified that immediately

prior to the Statement, Lyle had waived his Miranda rights and signed a pre-printed waiver form.

Lyle has made no showing that the videotape would assist his defense in any way.


### CONCLUSION

For the foregoing reasons, Defendants' motions to suppress evidence and statements, and

motion to sever are DENIED.


Dated: New York, New York
      October 1, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge