UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA                          :

                                                                   :         1:14-cr-00189-PAC-1

      - against -                                                  :

                                                                   :         **OPINION & ORDER**

MICHAEL VAN PRAAGH,                                 :

          Defendant.                                            :

-----------------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      Defendant Michael Van Praagh ("Defendant," "Van Praagh") is a 42-year-old inmate at

FCC Lompoc[1] who is currently scheduled to be released on June 14, 2024.  He moves for

compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that he has HIV

with a low CD4 cell count, and so is at high risk of serious injury or death should he contract

COVID-19 while in prison.

      The Government concedes that Van Praagh meets the "extraordinary and compelling

reasons" standard for a sentence reduction dictated by the statute but argues that the Court

nevertheless deny his motion after consideration of the sentencing factors in 18 U.S.C. § 3553(a).

Principally the Government argues that Van Praagh has not served an adequate portion (only 60

percent) of his sentence, and that his prior criminal history with drugs counsels against a

reduction.

---

[1] FCC Lompoc is made up of two facilities:  FCI Lompoc and USP Lompoc (collectively,
"Lompoc").  The Defendant is held at USP Lompoc.

These arguments are unconvincing.  Van Praagh's medical condition puts him at high risk should he contract COVID-19, and the concerns the Government raises about the integrity of the imposed sentence are not so weighty here as to overwhelm the particular degree of risk present in this case.  Van Praagh's motion for compassionate release is accordingly GRANTED, and his sentence is reduced to time served.  The five-year period of supervised release is re-imposed, with the first six months to be served in home incarceration.

## **BACKGROUND**

Van Praagh was arrested on March 31, 2014.  Minute Entry dated Mar. 31, 2014; Presentence Report ("PSR"), Dkt. 80, at 1–2.  He was initially indicted along with two co-defendants—Anthony Tarantino and James Lyle—on a single narcotics count of conspiracy to distribute and possess with intent to distribute 50 grams and more of methamphetamine and 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 ("Count One").  Dkt. 2, at 1–2.  A superseding indictment filed September 30, 2014 added an additional substantive count for Van Praagh of intentionally distributing and possessing with intent to distribute 50 grams and more of mixtures and substances containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count Two").  Dkt. 42, at 2.  Van Praagh pleaded not guilty to both counts.  Minute Entry dated Oct. 14, 2014.

The conspiracy in which Van Praagh participated began no later than the summer of 2012 and progressed from selling smaller quantities of methamphetamines to moving the drug by the pound by 2013, frequently from Manhattan hotels.  PSR, Dkt. 80, ¶¶ 11–14.  In May of 2013, Van Praagh and Tarantino checked out of a midtown Manhattan hotel, inadvertently leaving behind them about a pound of methamphetamine and $20,000 in their hotel room's safe.  *Id.* ¶

15.  By the time they realized their error hotel staff had discovered the drugs and money, and New York City police arrested Van Praagh when he returned to retrieve his drugs.  *Id.* Apparently undaunted by this arrest, Van Praagh continued selling methamphetamine along with his co-defendants in the same sizeable quantities for about ten more months until he was apprehended by Drug Enforcement Administration ("DEA") agents in March 31, 2014.  *Id.* ¶¶ 17–23.  The total amount of methamphetamine attributed to Van Praagh personally totaled between five and 15 kilograms.  *Id.* ¶ 27.

A five-day jury trial was held before this Court commencing on October 14, 2014 for Van Praagh and his co-defendant Lyle; the jury returned a guilty verdict as to both the substantive narcotics and conspiracy counts for both defendants on October 20.  Minute Entries dated Oct. 14–20, 2014; Dkt. 63, at 2–5.  The PSR indicated a statutory range of 10 years' imprisonment to life on Count One and five to 40 years on Count Two; the Guideline Provisions advised a sentence of between 168 and 210 months; and Probation recommended a sentence of 168 months' imprisonment.  PSR, Dkt. 80, at 18.  The U.S. Attorney's Office asked for a sentence within the Guidelines, and Van Praagh sought a below-Guidelines sentence of 120 months.  Dkt. 82, at 3; Dkt. 87, at 8.

At sentencing, the Court weighed Van Praagh's tumultuous upbringing, desire for positive change in his life, and letters from numerous friends and relatives.  Sent'g Trans., Dkt. 95, at 7:9–18.  It also recognized:

> [T]he crime that's been committed is a very serious one.  There's a long history of drug dealing.  There's plenty of opportunities to change, including his [prior] conviction . . . which, while Mr. Van Praagh was 29 then, certainly of a mature age, capable of changing, but he didn't change.  He kept on dealing drugs.  And his drug dealing with methamphetamine is a serious matter . . . . And as much as I want to believe Mr. Van Praagh saying he's reached a new chapter in his life, the history and his prior record suggests that he still continues to be a danger to the community.

*Id.* at 7:19–8:1, 8:14–17.  The Court imposed a sentence of 144 months' imprisonment, followed by five years of supervised release to run concurrently on each count.  Dkt. 90, at 2–3.

Van Praagh submitted a number of filings with this Court, all of which are related to his one motion for compassionate release.[2]  Dkts. 106, 108–09.  This Court appointed counsel under the Criminal Justice Act at Van Praagh's request, and that counsel filed a Supplemental Motion for Compassionate Release on June 18, 2020.  Dkt. 111.  Van Praagh argues that continued incarceration "puts him at great risk of death in light of the current pandemic" due to his HIV status.  Dkt. 109, at 10.

## DISCUSSION

### I.   Compassionate Release Standard

Motions for compassionate release amid the COVID-19 pandemic come to this Court under 18 U.S.C. § 3582(c)(1)(A)(i), which provides a statutory exception to the otherwise well-established general rule that a court may not modify a term of imprisonment once it has been imposed.  *United States v. Kaba*, 19 Cr. 242 (PAC), 2020 WL 2520807, at *2 (S.D.N.Y. May 18, 2020).  *See also Freeman v. United States*, 564 U.S. 522, 526 (2011) ("Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions.").  The statute provides that that:

The court may not modify a term of imprisonment once it has been imposed except that:

(1) in any case —

---

[2] Van Praagh filed three *pro se* documents, on May 21, 22, and 28.  Dkts. 106, 108–09.  These submissions are substantively identical, with differences in formatting.  *See also* Dkt. 110, at 1 n. 1.  The Court therefore refers only to the Defendant's most recent filing, at Docket 109, when citing to his *pro se* motion.  On June 18, 2020, the Federal Defenders submitted an emergency supplemental motion for compassionate release.

(A) The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . ., after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —

    (i)    extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

Courts determining whether "extraordinary and compelling reasons" are present in a particular case are guided (but not bound) by the Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which in Application Note 1 sets out what constitutes extraordinary and

compelling reasons.[3]  *United States v. Morel*, 10 Cr. 798 (PAC), 2020 WL 3412907, at *2 n. 2 (S.D.N.Y. June 22, 2020).  In the course of weighing the various priorities embodied in the policy statement and the factors in 18 U.S.C. § 3553(a), courts in this district have engaged in a factually intensive, case-specific inquiry into, *inter alia*, the health of the defendant, the threat of COVID-19 exposure at his facility, and whether a reduction would compromise the goals of the imposed sentence.  *United States v. Kosic*, 18 Cr. 30 (PAC), 2020 WL 3100459, at *2–3 (S.D.N.Y. June 11, 2020); *United States v. Brady*, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020).  "[T]he risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative

---

[3] Application Note 1 to U.S.S.G. § 1B1.13 addresses what constitutes extraordinary and compelling reasons:

> (A) Medical Condition of the Defendant
>
>> (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).
>>
>> (ii)    The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> ...
>
> (D) Other Reasons—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

complications from the disease." *United States v. Nwankwo*, 12 CR 31 (VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020) (collecting cases). *See also Brady*, 2020 WL 2512100, at *2 ("It is clear that the focus of the inquiry is on the defendant's condition, not general societal conditions.").

The statute requires that a movant prisoner "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or that 30 days "lapse . . . from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The First Step Act's amendment of 18 U.S.C. § 3582(c)(1)(A)(i) to allow prisoners to bring compassionate release motions on their own behalf did not turn the provision into a "get-out-of-jail card." *Brady*, 2020 WL 2512100, at *3.

## I.     Compassionate Release Motion

Compassionate release is properly granted here, where Van Praagh suffers from a medical condition that puts him at a heightened risk of an adverse outcome should he contract COVID-19; where the Government concedes that his health conditions constitute a "extreme and compelling reason[]" justifying release; where the medical care he has received in prison has not ameliorated the particularized risk to this defendant; where the Court finds that the objectives that shaped the original sentence will not be undone by a reduction; and where conditions at the Defendant's facility give little confidence that his heightened risk can be appropriately attended to.

### A.  Exhaustion

As an initial matter, the Government does not oppose Van Praagh's motion on exhaustion grounds. The record demonstrates that Van Praagh petitioned his warden for early release on April 7, and that his request was denied on April 13. Dkt. 110, at 1, Ex. A. As the Government

describes, the warden subsequently approved Van Praagh for pursuit of early release on June 1, only to have that decision reversed the next day by the BOP. *Id.* n. 1, Exs. C–D. Van Praagh filed the instant motion with the Court on May 21—well after 30 days had elapsed from his request to his warden. There is no statutory exhaustion bar to considering the merits of his motion.

### B. Extraordinary and Compelling Reasons

The Government concedes that Van Praagh's CD4 cell count remains low despite the HIV treatment he has received in prison, and that the Centers for Disease Control and Prevention ("CDC") recognize a low CD4 cell count as putting an individual at high risk from COVID-19. Dkt. 110, at 3. The Defendant and the Government are in agreement that Van Praagh's medical condition therefore rises to the level of "extraordinary and compelling reasons" to establish his eligibility for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Id.*; Dkt. 111, at 1–2. Indeed, Van Praagh's medical condition is a "serious physical or medical condition" that diminishes his ability to care for himself in prison and "from which he . . . is not expected to recover," satisfying the Sentencing Commission's policy statement. U.S.S.G. §1B1.13 app. n. 1. But the "Court's analysis does not end with a finding that" a particular defendant presents extraordinary and compelling reasons—it must also consider the factors in 18 U.S.C. § 3553(a). *United States v. Daugerdas*, 09cr581, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020).

### C. Section 3553(a) Factors

Courts considering compassionate release motions may exercise their discretion to grant a sentence reduction "after considering the [sentencing] factors" in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The Government's opposition to Van Praagh's motion rests on its argument that these factors—particularly "the nature and

circumstances of the offense," the "need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," Van Praagh's "history," and the "need for the sentence . . . to afford adequate deterrence" and "protect the public from further crimes of the defendant"—weigh against a reduction.  Dkt. 110, at 2–3.  The Defendant says otherwise.

As to the nature and circumstances of the offense and the need to provide just punishment, at sentencing the Court recognized the seriousness of Van Praagh's crime and crafted a sentence that reflected the more serious role played in the drug scheme by Van Praagh than by his co-defendant Lyle, who was sentenced to 10 years' imprisonment.  Sent'g Tr., Dkt. 95, at 8:1–6. The Government makes no representation of how much time would be enough to allow for a reduction, merely contending that the two-thirds of his prison term (accounting for good time credit) served by Van Praagh is insufficient.  Dkt. 110, at 4.  Other courts in this District have found on 18 U.S.C. § 3582(c)(1)(A) motions made amid the COVID-19 crisis that the goals of sentencing are not undercut by releasing defendants who are otherwise eligible for a reduction under the statute and who have completed two-thirds or more of their sentences. *Compare United States v. Anderson*, 16-CR-824-1 (JMF), 2020 WL 2849483, at *2 (S.D.N.Y. June 2, 2020) (granting compassionate release where non-violent offender had served two-thirds of his sentence) *and United States v. Pena*, 15-cr-551 (AJN), 2020 WL 2301199, at *1 (S.D.N.Y. May 8, 2020) (granting compassionate release motion where defendant had served two-thirds of his sentence) *with United States v. Toro*, 19 Cr. 299 (AT), 2020 WL 3472430, at *2 (S.D.N.Y. June 25, 2020) (denying release where defendant "ha[d] served less than half of his sentence") *and United States v. Decker*, 17-cr-0738 (LAK), 2020 WL 3268706, at*2 (S.D.N.Y. June 17, 2020) (denying motion where defendant had served eight and a half months of a 57-month

sentence).  In light of the circumstances, a reduction for Van Praagh would not, as the Government argues, "do[] violence" to the considerations that informed the Court's imposed sentence.  Dkt. 110, at 4.

The need to provide specific deterrence and to protect the public from future criminal activities must be considered in light of Van Praagh's prison record, which demonstrates a sincere, sustained effort to turn his life around.  Van Praagh has had no disciplinary infractions during his incarceration.  Dkt. 111, at 5.  Even before his sentencing, he taught GED courses to fellow inmates at the Metropolitan Correctional Center ("MCC"); he has completed drug education and treatment programs and enrolled in a bachelor's degree program at Adams State University; he undertook a six-month vocational program at a farm near Lompoc; and he has participated in an "Impact Program" to guide teenagers away from a life of crime.  Dkt. 111, at 6. The Defendant also appears to have familial and professional support that will ease his transition back into society.  Van Praagh has laid out a release plan under which he will live with his father in Queens, New York, and take up employment with the stagehands union, of which he says he is a member in good standing.  Dkt. 110, Ex. A, at 2.

Undiscussed by the Parties, but relevant to this motion, is the factor in 18 U.S.C. § 3553(a) regarding the "need . . . to provide the defendant with needed . . . medical care . . . in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).  That factor certainly tilts in Van Praagh's favor here, where the Government concedes that the HIV treatment he has received in prison has not improved his CD4 cell count.  The need to provide effective HIV treatment in the face of a pandemic was not within the Court's consideration at sentencing.

As referenced *supra*, the acting complex warden at FCI Lompoc reversed the initial denial of Van Praagh's request for release, only to have that determination overturned by the

BOP the next day.  Dkt. 110, Exs. C–D.  Without stating a view on the substance of the decision to revoke the determination to release Van Praagh, the Court observes that the BOP's rationale in its memorandum dated June 2, 2020 is that Van Praagh was not eligible under BOP procedures because he can independently perform the functions of daily life and "is not confined to a bed or chair for more than 50 percent of his waking hours."  *Id.*, Ex. D, at 2.  Nowhere does the memorandum mention COVID-19, or the Defendant's increased susceptibility to an adverse outcome should he become infected.  Furthermore, no judicial decision that this Court is aware of has required any petitioner to exhibit such severe disability to be granted a sentence reduction. It would therefore not be appropriate for the Court to give any weight to the BOP's decision to deny release.  And the Government agrees that Van Praagh's condition constitutes an extraordinary and compelling reason.

Finally, Courts in this district have routinely considered the presence and proliferation of COVID-19 in the defendant's facility.  *United States v. Williams-Bethea*, 18-cr-78 (AJN), 2020 WL 2848098, at *3 (S.D.N.Y. June 2, 2020); *United States v. Simmons*, 15 Cr. 445 (PAE), 2020 WL 1847863, at *1 (S.D.N.Y. Apr. 13, 2020); *Brady*, 2020 WL 2512100, at *3.  This consideration is certainly relevant for a defendant such as Van Praagh, whose medical condition hampers his body's very ability to fight infection.  *See United States v. Park*, No. 16-cr-473 (RA), 2020 WL 1970603, at *3–5 (S.D.N.Y. Apr. 24, 2020) (granting release amid "a documented outbreak" at FCI Danbury to defendant with "immune-compromising diseases" who had served less than half her sentence).  And yet none of the Government's submissions speak— at all—to the transmission or containment of the virus at Lompoc.  This is all the more surprising considering the extent to which COVID-19 appears to have spread among the populations at Lompoc's two facilities.

BOP figures indicate that, as of June 29, 918 inmates at FCI Lompoc and 112 inmates at USP Lompoc have tested positive for COVID-19.  *COVID-19 Inmate Test Information*, BOP, https://www.bop.gov/coronavirus/index.jsp (last visited June 29, 2020).  Together the two facilities appear to have had the most inmates tested positive in the federal system.  The BOP has reported four deaths at Lompoc between April 17 and June 1, including one of a 37-year-old man.  Press Release, BOP, Inmate Death at FCI Lompoc (June 1, 2020); Press Release, BOP, Inmate Death at FCI Lompoc (May 29, 2020); Press Release, BOP, Inmate Death at USP Lompoc's Satellite Camp (May 6, 2020); Press Release, BOP, Inmate Death at USP Lompoc (April 17, 2020).  But the Government does not argue, as it has in other compassionate release cases, that the BOP and the individual defendant's facility can effectively combat and contain COVID-19.  There is no argument regarding the precautions taken at the relevant facility.  *See United States v. Kosic*, 1:18-cr-00030-PAC-1, Dkt. 352, at 8, Exs. A, B (S.D.N.Y. May 27, 2020).

## **CONCLUSION**

Van Praagh's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is GRANTED, and his sentence is reduced to time served.  Van Praagh will return to his father's home in the Eastern District of New York.  The term of supervised release of five years is re-imposed, and the Defendant shall serve the first six months of supervised release on home incarceration, to be enforced by monitoring via a technology determined by Probation.

In light of the COVID-19 pandemic, the Defendant must remain at his approved residence except to seek any necessary medical treatment, in each instance with prior notice and approval by the Probation Department.  The Defendant is to possess or have access to a telephone that will allow video conferencing by the Probation Department.  Van Praagh is to

contact the Probation Department for the Eastern District of New York at 375-534-3400

promptly after his release to schedule a date to commence monitoring.

The Clerk of Court is directed to close the motions at Dockets Nos. 106, 108, 109, and

111.


Dated: New York, New York          SO ORDERED
      July 10, 2020

                               PAUL A. CROTTY
                               United States District Judge